IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02380-CMA-KLM

JESUS HALL,

      Plaintiff,

v.

BROWN, RN, in Her Individual Capacity,
ALLRED, DR, in His Individual Capacity,
MCDERMOTT, HA, in Her Individual Capacity, and
HAVER, Off, in His individual Capacity,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [#38][1] (the

"Motion").  Plaintiff, who is proceeding pro se,[2] filed a Response [#41] in opposition to the

Motion, and Defendants filed a Reply [#44].  The Motion is thus ripe for review.  Pursuant

to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion is referred to the

undersigned for recommendation [#39].  Having reviewed the entire case file and being

---

[1]  "[#38]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF).  This convention is used throughout the Recommendation.

[2]  The Court must construe liberally the filings of a pro se litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

sufficiently advised, the Court **RECOMMENDS** that the Motion [#38] be **GRANTED.**

## I. Summary of the Case

Plaintiff is presently an inmate at the United States Penitentiary - High Security in Florence, Colorado ("USP Florence"). *Second Am. Compl.* [#35] at 2. Plaintiff brings this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to address the medical care he received while incarcerated there. *Id.* at 4.

On November 25, 2012, before receiving his morning medication, Plaintiff alleges that he asked  Defendant Ethan Haver ("Haver"), who was a senior correctional officer at USP Florence, about receiving his daily medication. *Id.* at 6; *see also Motion* [#38] at 1. Defendant Haver, with whom Plaintiff had a previous problem, responded that "if [Plaintiff] requested medication again, he would not receive [it]". *Id.*

Later that day, Plaintiff alleges that Defendant Haver and Defendant Jenny Brown ("Brown"), who was a Registered Nurse at USP Florence, began conducting rounds to give prescribed medication to inmates located in Plaintiff's housing unit. *Id.* at 5. At about 3:45 p.m., Defendants Brown and Haver stopped at Plaintiff's cell to give him his medication. *Id.* Plaintiff alleges that Defendant Brown gave it to him, nodded her head to signify that he had properly taken the medication, and moved away toward the next cell. *Id.* at 6. However, Plaintiff alleges that Defendant Haver positioned himself at the side of Plaintiff's cell door and said that Plaintiff had not taken his medication. *Id.* Defendant Brown returned from the next inmate's cell and ordered Plaintiff to give her the cup that Plaintiff

had filled with coffee to wash down "the extremely harsh taste of the crushed Gabapentin."[3] *Id.* at 7.  Plaintiff handed her the empty cup, after which Defendant Brown said "in a threatening manner" that Plaintiff would never see his medication again.   *Id.*  Plaintiff asserts that Defendant Brown had a reputation for discontinuing inmates' medications "for the slightest reason[s]," such as if she did not like a particular inmate or felt that a particular inmate should not be receiving the medication he was prescribed.  *Id.* at 8.  Plaintiff states that Defendant Haver knew of Defendant Brown's propensity and therefore lied and manipulated her into having Plaintiff's medication stopped as harassment and in retaliation for past unspecified "disagreements" between Defendant Haver and Plaintiff.  *Id.*

The next day, November 26, 2012, Nurse Thompson,[4] who is not a defendant in this matter, was giving medication to inmates.  *Id.*  After Plaintiff failed to receive his medication in both the morning and the evening, he asked Nurse Thompson why he was not receiving it.  *Id.*  Nurse Thompson responded that Defendant Brown had discontinued his medication. *Id.*  Plaintiff tried to tell Nurse Thompson that Defendant Brown did not have the authority to stop his medication and that he was "in excruciating or unbearable pain" and needed his medication.  *Id.* at 8-9.  Nurse Thompson replied that he could not override the decisions of Defendant Brown and Defendant David Allred ("Allred"), a physician at USP Florence who was responsible for the medical health of all inmates at the facility.  *Id.* at 2, 9.

Plaintiff alleges that the following day, November 27, 2012, he filed a medical

---

[3]  Plaintiff states that there was a general policy requiring pills to be crushed before administration to inmates.  *Second Am. Compl.* [#35] at 7.

[4]  Plaintiff first refers to Thompson as a "Nurse" and at other times as a "PA."  For the sake of consistency, the Court uses "Nurse Thompson" throughout this document, as the distinction is not material to any legal issue addressed herein.

request with Defendant Allred and Defendant Lisa McDermott ("McDermott"), the Assistant Health Services Administrator for USP Florence. *Id.* at 9; *see also Motion* [#38] at 1. The request stated that he was "in extreme pain" because of the discontinuation of his medication, that he was suffering from sleep deprivation, and that he was "a chronic care patient." *Second Am. Compl.* [#35] at 9. He further stated that he was suffering from severe electric shocks, aching eyes, severe headaches, and an "inability to use the limited motion of [his] left hand, which was almost left totally paralyzed from a tragic personal experience." *Id.* Plaintiff asserts that these conditions had been medically documented and were the reason why he had been prescribed Gabapentin. *Id.* at 9, 10 (stating that the "Gabapentin is critical to the limited function of Plaintiff Hall's range of motion from the paralysis, and the other discomforts Plaintiff Hall experiences [as] listed herein").

On November 28, 2012, Plaintiff alleges that he "made a formal appeal" to Warden Daniels and Defendant McDermott during their rounds in Plaintiff's housing unit. *Id.* at 10. Plaintiff handed both officials a written request detailing his troubles and asking for their intervention. *Id.* at 10-11. Plaintiff included the fact that his nerve condition had been previously diagnosed by a Dr. Rice in 2010 at USP Lewisburg. *Id.* at 11. Plaintiff alleges that he also orally informed Warden Daniels and Defendant McDermott of his problem, to which they responded that there was nothing they could do for him. *Id.* Plaintiff replied that "it would be unprofessional, unprecedented, improper, and absurd to abruptly discontinue Plaintiff's medication without reviewing [his] medical files/history," without considering the damage being caused to Plaintiff, without prescribing a lesser medication, and without considering the findings of a Dr. Edinger and a Dr. Pigos of USP Lewisburg regarding Plaintiff's brachial plexus injury. *Id.* at 11-12. When Plaintiff requested a review of

-4-

Defendant Brown and Defendant Allred's decision, Warden Daniels and Defendant McDermott said that they would not go against the decision that had been made. *Id.* at 12.

On December 1, 2012, Plaintiff alleges that he stopped Nurse Thompson as he performed his rounds passing out medication to inmates. *Id.* Plaintiff said he was "in excruciating pain," to which Nurse Thompson responded that he agreed that someone with Plaintiff's injuries should not have his medication discontinued without some form of treatment. *Id.* Nurse Thompson promised to send an e-mail to Defendants Allred and McDermott about Plaintiff's condition. *Id.* at 13. On December 2, 2012, Nurse Thompson confirmed to Plaintiff that he had e-mailed Defendant Allred. *Id.*

On December 4, 2012, Plaintiff again "formally" appealed to Defendant McDermott about his pain and failure to receive medication. *Id.* Defendant McDermott told Plaintiff: "Hall, you have $58.00 in your account, and PA Cink informed me you should buy over the counter medication from the institutional commissary store list." *Id.* Plaintiff responded that a review of his medical records would demonstrate that any medications less strong than what had been prescribed would have no effect on his pain. *Id.* at 13-14. Defendant McDermott then walked away from Plaintiff's cell while replying, "You'll get your chance to talk to Allred." *Id.* at 14.

On December 5, 2012, Plaintiff saw Defendant Allred for an unrelated matter, at which time Defendant Allred stated in front of Plaintiff and an escort, Correctional Officer Daugherty, that he had stopped Plaintiff's medication without first reviewing Plaintiff's medical record. *Id.* at 14. That same day, PA Cink told Plaintiff that he could not override Defendant Allred's decision to discontinue Plaintiff's normal medication, but said that he could prescribe to Plaintiff "a self carry weaker pain medication." *Id.* at 14-15.

On December 6, 2012, Nurse Neil made the medication rounds in Plaintiff's cell block. *Id.* at 15. She stopped at Plaintiff's cell and gave him 500 mg of Keppra,[5] which PA Cink had newly prescribed. *Id.* Plaintiff indicated that his pain was getting progressively worse. *Id.* That evening, Plaintiff "formally" appealed to Lieutenant Lozano, telling him that he was "sustaining egregious pain and suffering" and that he had not been treated since November 25, 2012. *Id.* Plaintiff asked Lieutenant Lozano to ask Nurse Neil to give him Motrin or something similar to relieve Plaintiff's pain so he could sleep through the night because the Keppra was ineffective in reducing Plaintiff's pain level. *Id.* at 15-16. Lieutenant Lozano left but returned less than an hour later and told Plaintiff he would have to wait until morning. *Id.* at 16.

On the evening of December 8, 2012, Plaintiff appealed "formally" to PA Cink to put Plaintiff back on the Gabapentin because the Keppra prescription was not helping and actually seemed to be making Plaintiff's condition worse. *Id.* PA Cink informed Plaintiff that he had done all that he could and that only Defendant Allred could provide Plaintiff with Gabapentin. *Id.*

On December 9, 2012, Plaintiff handed Defendant Brown a sick-call request, telling her of his pain and suffering and that his condition seemed to be getting worse. *Id.* at 16-17. Defendant Brown replied, "You will never see your medicine again, as long as I have a say so." *Id.* at 17.

On or around December 13, 2012, Plaintiff filed a grievance concerning Defendant

---

[5] In his Second Amended Complaint [#35], Plaintiff refers to this prescription as "Keppar." Attached exhibits demonstrate that Plaintiff was prescribed Levetiracetam, the brand name of which is Keppra. Accordingly, the Court will refer to this drug as Keppra throughout.

Allred's failure "to return any disposition to my written complaints/request, filed 11/27/12."

*Id.* Defendant Allred responded to the grievance, stating:

> I discontinued the meds.  I reviewed Nurse Brown and Officer Haver['s] reports and I made the final decision to adjust your treatment.  Your pain condition does not place you in imminent danger (but only an uncomfortable position).  The medication(s) you were on are frequently abused by inmates, and any effort that deviates from pill-line procedures is considered an attempt to divert, and grounds for discontinuation.  We can address this at your next chronic care appointment.

*Id.* at 17-18.  Plaintiff asserts that Defendant Brown's and Defendant Haver's written report on the incident indicated that Plaintiff was observed taking his medication.  *Id.* at 19.  Plaintiff further states that he "was made to endure through his pain and suffering, and take a clinically proven ineffective medication for Plaintiff's pre-existing and chronic care condition(s), subjugating mental effects, from 11/26/12 through 12/19/12."  *Id.*

As a result of these allegations, Plaintiff asserts four claims.  *Id.* at 21, 29, 37.  In Claim One, he alleges Eighth Amendment violations against all Defendants, as well as First and Fourteenth Amendment violations against Defendant Allred.  *Id.* at 21-28.  In Claim Two,  Plaintiff alleges Eighth Amendment violations against all Defendants in their supervisory capacities.  *Id.* at 29-37.  In his third claim, labeled  "Failure to Administer Adequate Medical [Care]," Plaintiff alleges Fourteenth Amendment violations against Defendants Brown, Allred, and McDermott.[6]  *Id.* at 25, 38, 40, 41.  Plaintiff's fourth claim cites no legal theory, but appears to be another Eighth Amendment claim asserting that

---

[6]  Plaintiff also invokes the Eighth Amendment in his third claim, although the underlying factual scenario is indistinguishable from that in Claim One.  The Court therefore construes Plaintiff's third claim as an assertion that the acts occurring on and following November 25, 2012, violated his Fourteenth Amendment rights, and analyzes the entirety of his Eighth Amendment claims regarding that incident in the context of Claim One.

Defendant Allred and McDermott were deliberately indifferent because of their refusal to recommend him to a nerve specialist following a prior surgery. *See id.* at 42-47. As a result, Plaintiff seeks the following relief: (1) $75,000 in compensatory damages; (2) $75,000 in punitive damages; (3) $150,000 for "mental and emotional damages"; (4) costs of suit; and (3) $500,000 as to Claim Four against Defendants Allred and McDermott. *Id.* at 49. Defendants seek full dismissal of Plaintiff's lawsuit in the Motion [#38].

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III. Analysis

#### A. Qualified Immunity

Defendants assert qualified immunity from Plaintiff's claims against them, *Motion* [#38] at 5, and thus the Court will first examine whether Plaintiff's Second Amended Complaint would survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Butler v. Rio Rancho Public Schools Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003) ("Since the [Defendant] raised the defense of qualified immunity in its motion to dismiss, we first examine whether [Plaintiffs] asserted a violation of federal law in their complaint."). Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982) ("[G]overnment officials. . . generally are shielded from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")).

A government official is entitled to qualified immunity from liability for civil damages when his or her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. *Harlow*, 457 U.S. at 818; see also *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).  The Supreme Court has stated that "[f]or executive officials in general . . . our cases make plain that qualified immunity represents the norm." *Id.* at 807.  Thus, a government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).  Plaintiff's claims will be addressed in the order in which they were presented to find whether the alleged conduct presents a constitutional violation or whether Defendant's are entitled to qualified immunity.

## B.    Claim One: Eighth Amendment

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted.  U.S. Const. amend. VIII.  Punishments that "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  Because prisoners "must rely on prison authorities to treat [their] medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at

-10-

104 (quoting *Gregg*, 428 U.S. at 173).  The test for deliberate indifference is both objective and subjective: a prisoner must establish that he was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and that the defendant subjectively knew of and disregarded "an excessive risk to [the prisoner's] health or safety."  *Id.* at 837.

In order to satisfy the subjective prong of the test for deliberate indifference, a plaintiff must allege that each defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety."  *Farmer*, 511 U.S. at 837.  A defendant knows of and disregards an excessive risk to a prisoner's health or safety when he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and he actually draws that inference.  *Id.*  Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Accordingly, a prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired.  *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006).  "[A] prison doctor remains free to exercise his or her independent professional judgment," *id.* (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997)), and "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview."  *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)).

Defendants do not address the objective portion of Plaintiff's claim.  Instead, they argue that Plaintiff's claims fail for the following reasons: (1) Defendant Allred's participation

amounted to a difference of opinion regarding medical care, or negligence at worst, and not a constitutional violation; (2)  failure to allege subjective awareness in regards to Defendants Brown and Haver; and (3) failure to allege personal participation by Defendant McDermott.  *Motion* [#38] at 8, 11-12.

### 1.      Defendant Allred

Plaintiff alleges that Defendant Allred's discontinuation of his medication following the incident report filed by Defendant Brown without additional consultation and the resulting failure to re-prescribe Plaintiff's prior medication amounts to substantial indifference.  *Second Am. Compl.* [#35] at 25.  Defendant Allred argues that he merely exercised his professional judgment, that even medical negligence does not rise to the level of deliberate indifference, and that it is medically permissible to deny access to prescription medication as a result of a disciplinary infraction.  *Motion* [#38] at 11.

The Tenth Circuit recently addressed a case with several similarities to the instant case in *Todd v. Bigelow*, 497 F. App'x 839 (10th Cir. 2012).  In *Todd*, the plaintiff was a prisoner who was prescribed Neurontin (a brand name of the same medication in this case) to treat hip and back pain caused by a degenerative disorder.  497 F. App'x at 840-41.  The prescription was terminated following a dispute regarding whether or not the prisoner had attempted to hide the pills in his cheek.  *Id.* at 841.  Over the following month, the prisoner "repeatedly requested that his Neurontin prescription be reinstated."  *Id.*  The prison medical staff refused his request, but gave him a prescription for another pain reliever "less prone to abuse."  *Id.*  The prisoner claimed that the deprivation of Neurontin violated his Eighth and Fourteenth Amendments.  *Id.*  The Tenth Circuit ruled that the termination of Neurontin constituted "a difference of opinion with the medical staff as to the optimal pain-

management regimen," which was insufficient to support a claim of deliberate indifference. *Id.* (citing *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002)).

Plaintiff alleges that Defendant Allred refused to treat him. *Second Am. Compl.* [#35] at 25.  This allegation, however, fails to mention any specific incidences where Dr. Allred refused to treat him.  Instead, Plaintiff admits that he saw Defendant Allred on December 5, 2012 for an unrelated incident.  *Id.* at 14.  Plaintiff also states that he received a written response from Defendant Allred explaining the reasoning for the termination of his prescription. *Id.* at 17.  Thus, Plaintiff has not alleged that he was denied all treatment, only that he was denied the specific type of treatment that he wanted, i.e. Gabapentin.  The decision to discontinue a prescription is a "classic matter of medical judgment," and does not rise to the level of deliberate indifference.  *See Todd,* 497 F. App'x at 842; *Johnson v. Richins*, 438 F. App'x 647, 649 (10th Cir. 2011) (holding that fifteen-day denial of Neurontin did not rise to the level of deliberate indifference); *Arocho v. Lapin*,  No. 07-cv-02603-REB-KLM, 2011 WL 2292187, at *12 (D. Colo. Apr. 21, 2011) (holding that a doctor's opinion to discontinue medication for Hepatitis C failed to support a finding of deliberate indifference).  The pain caused by withdrawal of a medication, even if it was the result of medical negligence, would not rise to the level of a constitutional violation.  *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).  Furthermore, the Tenth Circuit has clearly established that there is a legitimate penological interest in the prevention of substance abuse, and that even erroneous efforts to control prescription hoarding do not rise to the level of deliberate indifference.  *Todd*, 497 F. App'x at 841; *see also*, 475 U.S. 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.").  As

-13-

such, the claims against Defendant Allred fail the subjective prong of the Eighth Amendment analysis, and he is entitled to qualified immunity in regards to Plaintiff's Claim One.

The Court therefore **recommends** that the Plaintiff's Claim One in regards to Defendant Allred be **dismissed with prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should attach to a dismissal when the plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").[7]

### 2.    Defendants Brown and Haver

Defendants Brown and Haver assert that Plaintiff has not alleged that they disregarded a serious risk. *Motion* [#38] at 12.  They also assert that, at most, Plaintiff has alleged that they were mistaken in their conclusion that Plaintiff had attempted to divert his medication. *Reply to Response to Motion* [#44] at 4.

Plaintiff alleges that Defendant Brown and Defendant Haver worked in concert to intentionally discontinue his medication. *Second Am. Compl.* [#35] at 6-8.  Plaintiff alleges that on November 25, 2012, Defendant Brown watched him take his medication, nodded, then walked off. *Id.* at 6.  Then, he alleges that Defendant Haver accused him of not taking his meds. *Id.*  He alleges that Defendant Brown then returned to Plaintiff's cell and ordered

---

[7] The Court notes that Plaintiff has already amended his Complaint twice in this lawsuit and four times in a previous lawsuit based on the same circumstances as this case. *See generally* Civil Action No. 12-cv-02804-CMA-KLM (dismissed without prejudice for failure to exhaust).  Plaintiff has had a significant number of opportunities in which to marshal and present allegations in support of this lawsuit, and thus dismissal with prejudice is appropriate. *See, e.g., Richardson v. Butler*, No. 12-cv-02912-REB-CBS, 2015 WL 1406337, at *2 (D. Colo. Mar. 24, 2015) (dismissing pro se prisoner plaintiff's claims with prejudice when the plaintiff had already filed multiple amended complaints).

Plaintiff to give her a cup which contained coffee that Plaintiff used to watch down his crushed medication. *Id.* at 7. Defendant Brown then told him that he would "never see [his] medication again" and filed an incident report. *Id.* Plaintiff concludes that this incident evidenced a conspiracy between Defendants Brown and Haver to deprive him of his medication. *Id.* However, this conclusion is unsupported by the facts of the Second Amended Complaint. Plaintiff does not assert that the allegedly false incident report contained any facts other than those above, he only contests the report's finding that he attempted to divert his medication. *See id.* at 23. The nonconclusory allegations presented by Plaintiff at most demonstrate that Defendants Brown and Haver negligently mistook Plaintiff's actions to be an attempt to divert medication. As stated in *Todd*, mistaken efforts by prison officials to control substance abuse do not rise to the level of reckless disregard of a serious medical risk. 497 F. App'x at 841; *see also Kenney v. Thomas*, No. 1:13-CV-2887, 2014 WL 2115224, at *7-8 (M.D. Pa. May 21, 2014) (holding that a pill line nurse did not display deliberate indifference when allegedly basing a decision to discontinue pain medication solely upon information from another prison official).

Furthermore, while the Tenth Circuit has determined that preventing an inmate from receiving medical treatment or denying access to medical personnel could constitute deliberate indifference, *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000)), Plaintiff has not alleged that he was ever deprived of medical care or access to medical personnel in general, only Gabapentin. As stated above, a difference of opinion as to medical treatment is not actionable. *Id.* at 1232

Even accepting Plaintiff's conclusion that Defendants Brown and Haver acted with intent to deny his medication, he has not alleged that they would have any reason to

suspect that over-the-counter or self-carry medications described by Plaintiff would be ineffective.  Defendant Haver is not a medical professional, and he alleges no facts that would suggest that Defendant Haver has any familiarity with Plaintiff's particular medical situation or the effects of Gabapentin.  *See Farmer*, 511 U.S. at 837 (stating that "the [prison] official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").  Similarly, while Plaintiff has alleged that it was Defendant Brown's duty to "administer inmates daily medication [and] evaluate inmate[s'] well-being," he does not allege that he had been so evaluated, or even that he had any interaction with Defendant Brown prior to this incident which may have given her some subjective awareness of his condition.  Therefore, Plaintiff has not alleged facts sufficient to establish an Eighth Amendment violation by Defendants Brown and Haver regarding the November 25, 2012 incident.

Plaintiff also alleges that Defendant Brown was deliberately indifferent by failing to reinstate his Gabapentin at an unspecified time following the November 25, 2012 incident. *Second Am. Compl.* [#35] at 19, 37.  He alleges that he "begged for medical attention," yet Defendant Brown stated that he "will never see [his] medicine again."  *Id.* at 17, 37.  As stated above, the decision to discontinue a medication is one of medical judgment, and Plaintiff has not alleged that he was denied other relief.

Accordingly, Plaintiff has not alleged a cognizable claim against Defendants Brown or Haver, and they are therefore entitled to qualified immunity in regards to Plaintiff's Claim One.

The Court therefore **recommends** that Plaintiff's Claim One be **dismissed with prejudice** in regards to Defendants Brown and Haver.  *See Reynoldson*, 907 F.2d at 127.

### 3.      Defendant McDermott

Defendant McDermott asserts that Plaintiff has failed to allege any facts showing that she personally participated in any conduct giving rise to Claim One.  *Motion* [#38] at 6.  However, a defendant-supervisor can be liable pursuant to *Bivens* if she "possesses responsibility for the continued operation of a policy the enforcement . . . of which subjects or causes to be subjected that plaintiff to the deprivation of any rights secured by the constitution."  *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (citation omitted; internal quotation marks omitted).   "A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Id.*

Plaintiff does not argue that Defendant McDermott herself failed to treat him, but rather that she "failed to correct her subordinate[s'] conduct."  *Second Am. Compl.* [#35] at 26.  As discussed above, Plaintiff has not alleged facts sufficient to state a deliberate indifference claim against Defendants Brown, Haver, or Allred.  Instead, Plaintiff repeatedly describes incidents where Defendant McDermott's medical staff responded promptly to his requests other than for Gabapentin.  Plaintiff saw Defendant Allred on December 5, 2012, for an unrelated incident.  *Id.* at 14.  Plaintiff received help contacting Defendant Allred from Nurse Thompson.  *Id.* at 13.  Plaintiff received a prescription for Keppra from PA Cink that it is not even clear that Plaintiff had requested.  *Id.* at 15.  The only request that was refused was the renewal of Plaintiff's Gabapentin prescription.  Similarly, Defendant McDermott personally informed Plaintiff about his ability to purchase over-the-counter

medication, which he refused, apparently without trying. *Id.* at 13. Thus, Plaintiff has failed to sufficiently allege that the medical department was deliberately indifferent to Plaintiff's medical needs, and Plaintiff has thus failed to state a claim against Defendant McDermott for her supervision of the medical department, and she is entitled to qualified immunity in regards to Plaintiff's Claim One.

The Court therefore **recommends** that Plaintiff's Eighth Amendment claim against Defendant McDermott be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

## C.    Claim One: First Amendment

Plaintiff's Claim One also asserts that Defendant Allred violated his First Amendment rights. *Second Am. Compl.* [#35] at 25. Defendants argue that First Amendment claims are not cognizable under *Bivens*. *Motion* [#38] at 12 n.3.

Liberally construed, Plaintiff alleges that Defendant Allred retaliated against him for exercising his First Amendment rights. The Court has previously declined to extend *Bivens* liability to  claims against prison officials. *Saleh v. United States*, No. 09-02563, 2011 WL 2682803, at *10-12 (D. Colo. Mar. 8, 2011), *overruled in part on other grounds by Saleh v. United States*, No. 09-02563, 2011 WL 2682728 (D. Colo. July 8, 2011). The Court suggested in *Saleh* that such claims may not have been recognized by the Supreme Court because prisoners may pursue Federal Tort Claims Act claims or claims for injunctive relief, regardless of the availability of a *Bivens* damages claim. 2011 WL 2682803, at *11. The Supreme Court has explicitly refused to acknowledge that federal prisoners may bring a claim for monetary damages based upon an alleged First Amendment violation. *See Iqbal*, 556 U.S. at 675 (noting that the Court had "declined to extend *Bivens* to a claim sounding

in the First Amendment").

The Court therefore **recommends** that the Plaintiff's First Amendment claim against Defendant Allred be **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 127.

**D. Claim Two: Eighth Amendment - Supervisory Capacities**

In his second claim, Plaintiff alleges that each defendant, in a supervisory capacity, should have intervened to "stop other officials" from utilizing an "unwritten internal policy" which deprived him of his medication. *Second Am. Compl.* [#35] at 30, 32, 34.  Defendants assert that he does not allege any new actions or omissions which would provide sufficient grounds for a supervisory capacity claim.  *Motion* [#38] at 13.

A plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676.  Supervisory status by itself is insufficient to support liability. *Id.* at 677.  In order to maintain a claim of supervisory liability, "the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds*, 614 F.3d 1196 (10th Cir. 2010) (citing *Iqbal*, 556 U.S. at 677)).  In order to bring a claim of supervisory liability under *Bivens*, a plaintiff must "identify the specific policies over which the particular defendants possessed responsibility and that led to the alleged constitutional violation." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013).

 Claim Two fails to allege any separate acts which would differentiate Defendants' conduct from that in Claim One.  As discussed above, Plaintiff has not alleged facts suggesting that any Eighth Amendment violation has occurred.  Thus, the Court cannot find

that Defendants may be liable for creating any "policy that led to [an] alleged constitutional violation." *See Dodds*, 614 F.3d at 1196.  Accordingly, Defendants are entitled to qualified immunity in regards to Plaintiff's Claim Two.

The Court therefore **recommends** that Plaintiff's Claim Two against all Defendants be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

## E.  Claim Three: "Failure to Provide Adequate Medical [Care]"

In his claim titled "Failure to Provide Adequate Medical [Care]," Plaintiff contends that Defendants Brown, Allred, and McDermott violated his Fourteenth Amendment due process rights.[8]

Defendants claims that Fourteenth Amendment Claims are not cognizable under *Bivens*. *Motion* [#38] at 12 n.3.  Although cited precedent does not support that assertion, the Court nonetheless finds that Plaintiff's claim does not allege all elements of a Fourteenth Amendment violation, either substantive or procedural, and therefore Defendants are entitled to qualified immunity.

### 1.  Procedural Due Process

Procedural due process protects the individual against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  In general, a plaintiff must make two showings in order to proceed on a procedural due process claim.  *See Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001).  First, a plaintiff must demonstrate

---

[8]  Plaintiff also asserts that Defendant Allred violated his Fourteenth Amendment rights in Claim One.  *See Second Am. Compl.* [#35] at 25.  Because that claim is indistinguishable from his Fourteenth Amendment claims here, the Court analyzes it in connection with his third claim.

that he possessed a protected liberty or property[9] interest.  *Id.*  Second, a plaintiff must show that the procedures utilized which impacted his protected interest were inadequate under the circumstances.  *Id.* at 1149.

Liberty interests "are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (stating that, for a liberty interest to exist, state law must create it with "language of an unmistakably mandatory character").  While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 228 (2001), this reality is tempered by the recognition that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country."  *Wolff*, 418 U.S. at 555-56.

Plaintiff is correct that he is entitled to medical care while incarcerated.  However, it is well-established that "[t]he prisoner's right is to medical care – not to the type or scope of medical care which he personally desires."  *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (quoting *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)).  Plaintiff does not allege that any Defendant deprived him of medical care generally.  Rather, he asserts that the denial of the specific medication which he desired constitutes failure to treat him at all.  *Second Am. Compl.* [#35] at 38.  Plaintiff was provided with

---

[9] Plaintiff does not assert, and the Court has found no law standing for the proposition, that a property interest may be implicated by the withholding of a desired course of medical treatment.

medical appointments and Keppra, but alleges that the new medication was "ineffective and insufficient." *Id.* at 16.  Accordingly, to the extent that Plaintiff alleges only that he was not provided with "the type or scope of medical care which he personally desires," *Henderson*, 518 F.2d at 695, Plaintiff does not identify a protected liberty interest.  To the degree that Plaintiff may be asserting that the denial of his grievances which demanded the reinstatement of his prescription violated a protected liberty interest, it is also well established that "prisoners have no interest in prison grievance procedures."  *See Todd*, 497 F. App'x at 842 (citing *Boyd v. Werholtz*, F. App'x 311, 332 (10th Cir. 2011)).  Therefore, Plaintiff fails to state a cognizable claim pursuant to his constitutional right to procedural due process.

### 2.  Substantive Due Process

Although it may be possible to analyze Plaintiff's claim under the framework of substantive due process, such analysis is disfavored if the claim can be analyzed under "an explicit textual source of constitutional protection."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Because Plaintiff's Fourteenth Amendment claim is for all intensive purposes indistinguishable from his Eighth Amendment Claim, the Court will not analyze Plaintiff's Fourteenth Amendment claim under the framework of substantive due process; instead, the Plaintiff's Fourteenth Amendment claim may be dismissed for the same reasons set forth in Part III.B.

Plaintiff fails to allege facts sufficient to state a claim for violation of either procedural or substantive due process under the Fourteenth Amendment.  Defendants are therefore entitled to qualified immunity in regards to Plaintiff's third claim.

The Court therefore **recommends** that the Motion [#38] be **granted** in regard to

Plaintiff's third claim, titled "Failure to Provide Adequate Medical [Care]" and that these claims be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

F.     **Claim Four - "Failure to Provide After Care Treatment"**

Plaintiff's fourth claim asserts that he needs "therapy" and "follow up treatment by a nerve specialist" after his "two unsuccessful surgeries at USP Lewisburg," but Defendants McDermott and Allred have denied his numerous requests to see one. *Second Am. Compl.* [#35] at 45.  While no constitutional provision is stated, the Claim asserts that Defendants were "deliberately indifferent," and the Court therefore analyzes it pursuant to the Eighth Amendment.

Decisions such as "whether to consult a specialist or undertake additional medical testing" fall within the scope of medical judgment for purposes of deliberate indifference analysis.  *Self*, 439 F.3d at 1232.  A claim is actionable "only in cases where the need for . . . referral to a medical specialist is obvious."  *Id.*  The Tenth Circuit has laid out the following nonexclusive list of examples of "obviousness": "(1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition; and (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency."  *Id.*  "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met."  *Id.* at 1233.

-23-

It is unclear what exactly Plaintiff is requesting should be done.  He states that he wishes to have "therapy" and an appointment with a "nerve specialist" due to "muscle wasting" in his left hand and arm.  *Second Am. Compl.* [#35] at 44.  Plaintiff does not allege how either therapy or an appointment with a nerve specialist would materially alter his condition.  Similarly, it is not clear that Plaintiff's injury is sufficiently serious to warrant treatment from a specialist.  *See Wood v. Mohr*, 2:12-cv-00978, 2014 WL 1330640, at *4 (S.D. Ohio Apr. 1, 2014) (holding that prison medical staff were not deliberately indifferent when denying a brachial plexus surgery to a prisoner despite the fact that the prisoner pled that he would lose his arm if the surgery was not performed and that the surgery had been recommended by specialists).  The "Medical Duty Report" dated April 17, 2015, which Plaintiff has attached to his Second Amended Complaint lists him as having no physical limitations or restrictions, despite the contraction of his fingers.  [#35] at 121.

Even assuming his injury is sufficiently serious, Plaintiff has failed to allege that the need for a medical specialist would be obvious.  Plaintiff's situation is seemingly most analogous to the first scenario laid out in *Self v. Crum*, i.e. "a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral." 439 F.3d at 1232.  However, even assuming that Plaintiff has alleged that Defendant Allred recognized "an inability to treat [Plaintiff]," Plaintiff has also alleged that outside medical opinions have been sought in response to his requests.  *See Second Am. Compl.* [#35] at 116-20. These requests and responses state that Plaintiff was evaluated by multiple medical providers other than Defendant Allred, none of whom recommended that Plaintiff required a nerve specialist or therapy.  Plaintiff has not shown that Defendant Allred has

-24-

provided anything other than "a level of care consistent with the symptoms presented." Therefore, Defendant Allred is entitled to qualified immunity in regards to Plaintiff's fourth claim.

As stated above, Defendant McDermott cannot be held liable for failure to correct conduct which does not violate the Constitution.  *See Dodds*, 614 F.3d at 1199.  Because Plaintiff has not stated that Defendant McDermott was involved in this matter beyond her supervisory capacity, and Plaintiff has not alleged a cognizable claim against any of her subordinates, Defendant McDermott is also entitled to qualified immunity in regards to Plaintiff's fourth claim.

The Court therefore **recommends** that Plaintiff's fourth claim, titled Failure to Provide be **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 127.

### IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#38] be **GRANTED** and that Plaintiff's Second Amended Complaint [#35] be **DISMISSED with prejudice**.

IT IS HEREBY **ORDERED** that, pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v.*

*Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: August 17, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge